Brian H. Song, Esq. #188662
Briansong@SongLeeLaw.com
BHS LAW CORPORATION
2559 S. Bascom Avenue
CAMPBELL, CA 95008
TEL: (408)628-4257
FAX: (408)628-4258

Attorney for Plaintiff
Bhs Law LLP

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

(San Jose Division)

| | |
|---|---|
| BHS LAW LLP, a California limited liability partnership,<br><br>      Plaintiff,<br><br>      vs.<br><br>HON. MICHAEL MARKMAN, an individual (a state judge sued in his *individual* capacity)<br><br>      Defendant | CASE NO.:   5:25-cv-9864<br><br>COMPLAINT  FOR  CIVIL  RIGHTS VIOLATIONS (42 USCS §1983) |

BHS LAW, LLP
2559 S. Bascom Ave.
CAMPBELL, CA 95008
Tel: (408)628-4257: Fax: (408)628-4258

**INTRODUCTION**

1.      Plaintiff BHS Law LLP ("BHS") brings this civil-rights action under 42 U.S.C. § 1983 against Hon. Michael Markman, a judge of the Alameda County Superior Court ("State Judge"), for violating Plaintiff's First and Fourteenth Amendment rights. Facts and authorities supporting unavailability of Judicial Immunity is alleged below.

2.      During the course of presiding over the state class action *Mendoza et al. v. West Coast Quartz Corp.*, RG18927787 (Alameda Superior Court, 2018-Cont.) ("*Mendoza Action*"), State Judge made knowingly false criminal accusations, threatened Plaintiff with criminal prosecution, and published untrue findings of attorney misconduct. These unconstitutional acts caused Plaintiff severe reputational and economic harm, including the withdrawal of a legitimate engagement and the loss of one of its largest clients.

3.      State Judge's actions were not judicial acts performed within the scope of lawful jurisdiction. The *Mendoza Action* lacked subject-matter jurisdiction on its face because the claims did not satisfy statutory prerequisites, rendering judicial immunity inapplicable. State Judge also acted outside all judicial authority by issuing threats and accusations that were unrelated to adjudicating the case.

4.      Plaintiff seeks redress solely for violations of its own constitutional rights. Plaintiff does not seek relief on behalf of its former client, West Coast Quartz Corp. ("WCQ"), nor challenge the State Judge's legal rulings, demeanor, or procedural decisions. The relief sought is limited to compensating Plaintiff for injuries caused by unlawful threats, defamatory statements, and stigmatizing constitutional violations and other equitable remedies, to the extent applicable.

**PARTIES**

5.      Plaintiff BHS Law LLP is a California law firm located in Santa Clara County, California. Plaintiff was the attorney of record of WCQ in Mendoza Action, until it was abruptly and unexpectedly fired in mid-May 2025 and replaced by O'Hagan Meyers LLP.

6.      Defendant Hon. Michael Markman is, and at all relevant times was, a judge of the Alameda County Superior Court. He presided over Mendoza Action since about mid-2022. He is sued in his individual capacity for acts taken without jurisdiction and outside the judicial function, which are not protected by judicial immunity.

BHS LAW, LLP
2559 S. BASCOM AVE.
CAMPBELL, CA 95008
Tel: (408)628-4257: Fax: (408)628-4258

**JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT**

7.      This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. Federal-question jurisdiction exists under 28 U.S.C. § 1331.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the constitutional violations occurred within this District, and Plaintiff resides here.

9.      San Jose Division is proper in that there is a closely related action pending Plaintiff and WCQ's parent company, Worldex Industry and Trading Co., Ltd. ("WDX"), before this Court, i.e., *Bhs Law LLP v. Worldex Industry And Trading Co., Ltd.*, 25-cv-04471-SVK (N.D. Cal. 2025) ("*WDX Action*").

**FACTUAL BACKGROUND**

**A. Overview of the Mendoza Action and the Subject Break-Schedule System of WCQ**

10.      *Mendoza Action* challenged WCQ's break policies under California labor law. For many years, since about 2012 or so, WCQ had implemented and maintained a flexible break policy in which supervisors and team leads—many of whom were themselves hourly employees—created and enforced department-specific break schedules to accommodate a diverse workflow, multi-building layout, and employee commuting patterns.

11.      WCQ published only a general guideline known as the Time Keeping Standard ("TKS"), which expressly delegated break-enforcement authority to department-level supervisors and leads. A true and correct copy of TKS is attached hereto as **EXHIBIT 1**, the second page of which is a relevant page from WCQ's Employee Handbook. Both documents were admitted with no objections whatsoever into evidence during the trial of *Mendoza Action*.

12.      Class Members consistently testified that BHS never attempted to influence, intimidate, or pressure them about their testimony or class status. Many testified they had never seen attorney Brian Song outside depositions or trial. A relevant exchange between State Judge and a class member on the witness stand is attached hereto as **EXHIBIT 2** for reference purposes.

**B. Judge Markman Creates a False Intimidation Narrative**

13.      Despite uncontradicted testimony, State Judge repeatedly advanced a false narrative that BHS intimidated Class Members into contradicting Mendoza's allegations.

14.      State Judge had no factual basis for this accusation. He had personally heard Class

BHS LAW, LLP
2559 S. Bascom Ave.
Campbell, CA 95008
Tel: (408)628-4257: Fax: (408)628-4258

Members affirm that no intimidation occurred.

15. Nevertheless, State Judge adopted and repeated the false narrative, using it to justify threats of criminal prosecution against BHS, accusatory statements on the record, and later, false findings of "attorney misconduct" incorporated into written decisions.

16. These actions were deliberate, not accidental or spontaneous. They were not the result of judicial frustration, but were repeated, escalating, and made despite objections and protests and contrary testimony.

**C. Lack of Subject-Matter Jurisdiction in the *Mendoza Action***

17. Judicial immunity does not apply because *Mendoza Action* lacked subject-matter jurisdiction on its face. *Mendoza Action* was premised on the legal theory that TKS was as a matter of law in violation of relevant Cal. Labor Code. For instance, State Judge granted Capstone's Motion for Summary Adjudication solely based on review of TKS, ruling it unlawful as a matter of law.

18. To satisfy Fed. R. Civ. Proc. Rule 11, the undersigned undertook reasonable research to find readily available legal support for the foregoing position. Under *Drink Tank Venture LLC v. Real Soda in Real Bottles, Ltd*., 71 Cal.App.5th 528 (2021) ("*Drink Tank*"), a court lacks subject matter jurisdiction when a statute-based cause of action fails to meet statutory prerequisites. Colloquially speaking, where the law prohibits a conduct, the court cannot assume jurisdiction over a party, who did not commit the prohibited conduct.

19. Mendoza's meal-break "six-hour" theory did not state a violation of Lab. Code § 512(a). TKS permitted meal breaks within six hours, which necessarily includes within five hours. TKS also stated that employees working five hours are entitled to a full meal period. Thus, the alleged conduct did not violate § 512(a), depriving the State Judge of jurisdiction.

20. Mendoza's rest-break "approval requirement" theory likewise did not allege any conduct prohibited by law. No statute forbids employers from requiring employees to notify supervisors before leaving premises before taking a rest break. TKS was silent on any requirement during the break itself.

21. Because Mendoza purposely relied only on TKS and eschewed any efforts to establish liabilities to be determined based on break practices, Mendoza's complaint alleged no statutorily unlawful policy. Accordingly, the State Court was without jurisdiction from inception. Alternatively, under *Drink*

BHS LAW, LLP
2559 S. BASCOM AVE.
CAMPBELL, CA 95008
Tel: (408) 628-4257; Fax: (408) 628-4258

*Tank*, even if a court had jurisdiction at the outset, if the plaintiff modifies his theories of liability in such a way that fails to satisfy the requirement of remaining cause of action, the court lacks subject matter jurisdiction, thus having no power to proceed with the action.

22.     Additionally, TKS was the product of negotiated workplace conditions between management and Hourly Employees, making the subject matter preempted by the National Labor Relations Act. Claims involving negotiated break policies fall under NLRA governance, entirely eliminating state jurisdiction.

## THE STATE JUDGE'S WRONGFUL ACTS

### A. Threats of Criminal Prosecution (First Amendment Violation)

23.     When WCQ prepared to file a lawful cross-complaint for indemnity against certain supervisory Class Members—an action well supported by California law—State Judge accused BHS of intending to "intimidate Class Members."

24.     BHS repeatedly advised the State Judge that cross-complaints for indemnity are legally permitted and do not constitute intimidation. See for example *Erhart v. Bofl Holding, Inc.,* 387 F.Supp.3d 1046, 1056-1057 (S.D. Cal. 2019). Despite this, State Judge issued escalating threats of criminal referral.

25.     Fearing criminal exposure created solely by State Judge's accusations, BHS—after advising the Court and Capstone—dismissed the cross-complaint. This chilled BHS's advocacy, impeded its representation, and forced it to alter litigation strategy.

26.     The threats served no judicial function and did not concern the merits of the case. They were retaliatory, unlawful, bad-faith and outside jurisdiction, violating BHS's First Amendment right to advocate on behalf of its client.

### B. Publication of False Findings of Attorney Misconduct (Fourteenth Amendment Violation)

27.     State Judge later incorporated false and unsubstantiated findings of "attorney misconduct" into his written orders, statements of decision, and judgment.

28.     These published statements were materially false, unnecessary to any judicial determination, and made outside jurisdiction. They directly caused BHS severe reputitional harm.

29.     In May 2025, WCQ abruptly terminated BHS. In a sworn declaration submitted in post-judgment proceedings, WCQ's officer Steve Ko stated he fired BHS because he was told BHS committed

BHS LAW, LLP
2559 S. BASCOM AVE.
CAMPBELL, CA 95008
Tel: (408) 628-4257: Fax: (408) 628-4258

misconduct. No other reason was given. A copy of said declaration is attached hereto as **EXHIBIT 3** for this Court reference. The undersigned made the highlights appearing on Exhibit 3 to draw this Court's attention.

30.    As a result of the firing, BHS lost hourly and contingency engagements, WCQ stopped paying earned fees, BHS lost two active litigations, and BHS suffered severe reputational injury, not to mention one of the most significant clients, WCQ. Plaintiff's engagement with WCQ predates Mendoza Action and for many diverse matters. Unless BHS's reputation is restored by this Action, BHS may never be able to recover WCQ as its client even long after *WDX Action* is over.

**PRAYER FOR RELIEF**

Plaintiff prays for relief and judgment against Hon. Michael Markman as follows:

1.    Compensatory damages for any fees lost.

2.    Temporary, preliminary, and permanent injunction to restrain Hon. Michael Markman from falsely accusing Plaintiff of misconduct of intimating Class Members.

3.    Declaration that Plaintiff has not committed any misconduct.

4.    Declaration that State Judge violated Plaintiff's First and Fourteenth Amendment Rights.

5.    Reasonable attorney's fees.

6.    Cost of lawsuit.

7.    All other reasonable reliefs.

//

Dated: November 16, 2025

RESPECTFULLY SUBMITTED

Bhs Law Corporation

/s/ Brian H. Song

_____
Brian H. Song, Esq. (SBN 188662)
Attorney for Plaintiff BHS LAW LLP

BHS LAW, LLP
2559 S. BASCOM AVE.
CAMPBELL, CA 95008
Tel: (408)628-4257: Fax: (408)628-4258

Ex. 1



**WEST COAST QUARTZ**
**WCQ ASIA-PACIFIC**
**WCQ TAIWAN**
**WCQ JAPAN**
**WCQ SOLAR**

**1000 Corporate Way**
**Fremont, CA 94539**
**Tel: 510-249-2160**
**Fax: 510-249-2168**

**Dear WCQ Employee;**

I would like to go over with you the time keeping standard for the company moving forward.  Please note that this is effective as of xx/xx/xxxx.

- Clock in within 5 minutes of your scheduled shift unless otherwise informed by your supervisor.

- Once clocked in report immediately to your work station.

- Once on the clock even on your "paid" break, you must remain on the property unless you have prior approval by a supervisor or manager.  Being off property while on the clock and without prior authorization from your supervisor will mean that you have abandoned your job and have voluntarily terminated your employment.

- Never work off the clock even if requested by your manager or supervisor.

- Employees working 5 hours or more are entitled to at least 1unpaid 30min meal break.

- All employees must take their first break within 6 hours of their start time.

- Meal Breaks shall be uninterrupted. If an employee is in the middle of a meal break and is interrupted by the supervisor for company business, the meal break starts over from the beginning.

- Working through lunch is not allowed and must be approved by HR. Working through a lunch will result in company paying penalty pay and employee subject to progressive discipline if you do not have prior approval from a supervisor or manager.

- All overtime must be approved in advance by supervisor.

Failure to adhere to these rules may result in immediate disciplinary action up to and including termination.

Sincerely:

**Jeffrey F. Golez SPHR**
**Director of Human Resources**
**West Coast Quartz Corporation**

Please sign and return to the HR Coordinator upon acknowledgment and receipt.

Accepted by: _____  Date: _____

**Meal Time**

Except for certain exempt employees, all employees who work five or more hours in a day are required to take a 30-minute unpaid meal period.  An employee who works over ten hours in a day is required to take a second 30-minute unpaid meal period unless the employee elects to waive the second meal period as described below.  Employees are completely relieved of their job responsibilities during their meal periods.  For this reason, unless there is a valid written agreement for an on-duty meal period, non-exempt employees must clock in and out for their meal periods.

Waiver of Meal Period.  Employees may waive their meal periods only under the following circumstances:  If an employee will complete their workday in six hours, the employee may waive their meal period.  Additionally, depending upon your occupation, employees who work more than ten hours in a day may be able to waive, with written approval, their second meal period, but only if they take their first meal period and they do not work more 12 hours that day.   Anytime you elect to waive a meal period you must submit a written request and receive prior written authorization from your supervisor.  Employees may not waive meal periods to shorten their workday or to accumulate meal periods for any other purpose.

On Duty Meal Period.  In limited situations, certain designated employees may be required to work an on-duty meal period due to the nature of the employee's duties.  Unless your supervisor directs you to take an on-duty meal period due to the nature of your job duties and you agree to an on-duty meal period in writing, you will not be permitted to take an on-duty meal period.

**Breaks (California Employees)**

Employees will receive one, ten-minute paid break for every four hours worked.  This time will generally be taken at the same time as a group each day.

**Lactation Breaks**

The company will provide a reasonable amount of break time to accommodate a female employee's need to express breast milk for the employee's infant child.  The break time should, if possible, be taken concurrently with other break periods already provided.  Non-exempt employees should clock out for any time taken that does not run concurrently with normally scheduled rest periods, and such time generally will be unpaid in accordance with state law.  The company will also make a reasonable effort to provide the employee with the use of a room or other location in close proximity to the employee's work area for lactation breaks.

Employees should notify your supervisor to request time to express breast milk under this policy.  The company reserves the right to deny an employee's request for a lactation break if the additional break time will seriously disrupt operations.

No provision of this policy applies or is enforced if it conflicts with or is superseded by any requirement or prohibition contained in a federal, state, or local law or regulation.  Anyone with knowledge of such a conflict or potential conflict should contact your supervisor.

**CONFIDENTIAL**

Ex. 2

A.    No.

Q.    As a supervisor, do you have to review punch records of the employees you supervise for accuracy and completeness?

A.    I don't have access to the time cards.

Q.    Okay.  Does your supervisor have access to the time cards?

A.    Yes.

MR. STOBART:  Okay.  No further questions for this witness.

MR. SONG:  Just one --

THE COURT:  Mr. Vargas, do you have any concern that you might be punished for anything having to do with this lawsuit?

THE WITNESS:  No.

THE COURT:  Okay.

MR. SONG:  One redirect, your Honor.

THE COURT:  Redirect.

REDIRECT EXAMINATION

By BRIAN SONG, Attorney at Law, Counsel on behalf of the Defendants:

Q.    The last time I saw you it was over video call; right?

MR. STOBART:  Objection.  Leading.

THE COURT:  Sustained.

Ex. 3

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
06/16/2025 at 11:49:13 PM
By: Curtiyah Ganter,
Deputy Clerk

**O'HAGAN MEYER LLP**
DANIEL H. QUALLS, SB# 109036
    Email: DQualls@ohaganmeyer.com
VINCENT R. FISHER, SB# 276334
    Email: VFisher@ohaganmeyer.com
MARCUS J. LEE, SB# 281886
    Email: MLee@ohaganmeyer.com
One Embarcadero Center, Suite 2100
San Francisco, California 94111
Telephone: 415.604.0159

Attorneys for Defendant WEST COAST QUARTZ
CORPORATION

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| LUIS MENDOZA, and all others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>WEST COAST QUARTZ CORPORATION, a California Corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. RG18927787<br><br>**DECLARATION OF STEVE KO IN SUPPORT OF DEFENDANT WEST COAST QUARTZ CORPORATION'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Date: July 8, 2025<br>Time: 10:00 a.m.<br>Dept.: Dept. 23<br><br><br>Action Filed: November 7, 2018<br>FAC: May 29, 2019<br>SAC: November 4, 2019<br>Trial Date: None Set |

1

DECLARATION OF STEVEN KO IN SUPPORT OF DEFENDANT WEST COAST QUARTZ CORPORATION'S
SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

I, Steve Ko, declare as follows:

1.    I am the Director, Global Finance of West Coast Quartz Corporation ("WCQ") operations.  Brian Song of Bhs Law, LLP ("Bhs") represented WCQ as outside counsel from approximately 2015 to WCQ's termination of Bhs on May 16, 2025.  Bhs historically provided WCQ with representation regarding commercial matters, unpaid invoice collection matters and various legal matters.  Brian Song is of Korean origin and speaks Korean.  The senior management of WCQ is nearly exclusively native Korean individuals who speak Korean and speak English with varying degrees of proficiency.

2.    The Mendoza v. West Coast Quartz, Inc. case ("Mendoza") case is the first labor law case brought against WCQ.  The Mendoza case is the first-class action case brought against WCQ.  Brian Song was the Bhs attorney with whom I and WCQ worked exclusively.  WCQ did not seek advice from any other attorney regarding the Mendoza case until May 16, 2025.  The senior management team of WCQ and I relied on Mr. Song to represent the best interests of WCQ as allowed by American law.  The senior management team of WCQ and I did not have prior significant experience with American courts.  Mr. Song himself decided the steps to take in the Mendoza case.  Mr. Song regularly informed me and WCQ management that steps he was taking on behalf of WCQ were the necessary legal steps required to represent WCQ.  I and the WCQ senior management team believed and trusted Mr. Song to take the legally appropriate and proper steps in the Mendoza case to represent WCQ.  WCQ at all times wished to abide by American law.  WCQ firmly believed that WCQ must comply with the law and not act on what WCQ wished the law to be, even if WCQ had a different view of the law.

3.    The senior WCQ management team and I did not understand at any time that Mr. Song was taking steps or actions on behalf of WCQ that were improper or not permitted in an American court.  WCQ believed any actions that Mr. Song was taking was within the boundary of the law per the advisement from a certified legal professional with proper credentials and with a fiduciary duty to act for the benefit of WCQ.  We trusted Mr. Song to conduct himself and our defense as American law allowed.

DECLARATION OF STEVEN KO IN SUPPORT OF DEFENDANT WEST COAST QUARTZ CORPORATION'S SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

4.    WCQ is now represented by O'Hagan Meyer, LLP ("O'Hagan Meyer"). WCQ and I now have a much clearer knowledge and understanding of the *Mendoza* case and its history. We are very, very pleased to now be represented by O'Hagan Meyer. We are grateful for the way O'Hagan Meyer is representing WCQ and for the steps O'Hagan Meyer has taken in the *Mendoza* case, a federal court case filed by Mr. Song and then dismissed by WCQ as represented by O'Hagan Meyer, and a California Superior Court case filed by Mr. Song and then dismissed by WCQ as represented by O'Hagan Meyer.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on this 13th day of June, 2025, at Fremont , California.

By: _____
Steve Ko

---

3